[No. S063339. Aug. 12, 1999.]

DAN J. AGNEW, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Mandel & Norwood, S. Jerome Mandel and Lilly Lewis for Plaintiff and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, David S. Chaney, Carol H. Rehm and Felix E. Leatherwood, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**BAXTER, J.**—The principal issue in this declaratory relief action is the validity of a State Board of Equalization (Board) policy pursuant to which a taxpayer must pay both accrued interest on a tax deficiency assessment and the tax itself as a prerequisite to Board consideration of the taxpayer's claim for refund of sales and use taxes. Preliminary issues are whether the action is barred either because plaintiff failed to exhaust administrative remedies or as

an action to "prevent or enjoin the collection of any tax" within the meaning of California Constitution, article XIII, section 32,[1] and Revenue and Taxation Code section 6931.[2]

The Court of Appeal held that the action was not one to prevent or enjoin collection of a tax because plaintiff had paid the delinquent taxes assessed by the Board. The court concluded, contrary to the view of the Board, that the interest which had accrued on the delinquent tax was not part of the tax. On that basis, it also held that payment of accrued interest on a tax deficiency is not a prerequisite to either an administrative refund claim or a subsequent action for refund of taxes.

We agree.

We have reviewed the history of California Constitution, article XIII, section 32, its predecessors, both constitutional and statutory, and the law in effect when bars to pre-payment tax litigation originated in California. Because the Legislature had not imposed interest on delinquent taxes at that time, this history does not establish that the drafters of article XIII, section 32 or the electorate had reason to or did consider how accrued interest should be treated. The constitutional history offers no basis for concluding that the drafters or the electorate intended to require payment of both accrued interest and the tax itself as a prerequisite to litigation over the propriety of a tax assessment.

Because neither the language of section 6931 or of the Sales and Use Tax Law (§ 6001 et seq.), of which section 6931 is a part, nor the history of this statute reflects legislative understanding that accrued interest on a tax deficiency is part of a sales or use tax, we reach the same conclusion with respect to the statutory pre-payment bar. Having done so, we also conclude

---

[1]California Constitution, article XIII, section 32: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

Although similar provisions first appeared in the Constitution of 1879 as article XIII, former sections 14 and 15, added in 1910 and 1926 respectively, even before that time injunctions against collection of taxes were not permitted if the plaintiff had an adequate remedy at law. To establish that legal remedies were inadequate the plaintiff was required to demonstrate irreparable injury or a cloud on title from a tax lien. (*Sav. and Loan Society* v. *Austin* (1873) 46 Cal. 415, 488-490.)

[2]All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

Section 6931: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any tax or any amount of tax required to be collected."

that the Board's prepayment policy may not be enforced insofar as it requires prepayment of interest before a tax refund claim will be considered.

We affirm the judgment of the Court of Appeal.

I

*Background*

Plaintiff is a resident of Washington. ▬▬■ In September 1991, the Board assessed a use tax on plaintiff's 1984 purchase of a 25 percent interest in Hail Bold King, a thoroughbred racehorse.[3] In April 1992, the Board assessed a sales tax on plaintiff's sale of syndicate shares in Desert Wine, another thoroughbred horse. In each instance, plaintiff filed a petition for redetermination of the assessment pursuant to section 6561. After an administrative appeal (Cal. Code Regs., tit. 18, div. 2, ch. 10), the assessments were confirmed by Board staff in August 1994, and plaintiff sought a hearing before the Board. (§ 6562.) After the June 14, 1995, hearing the Board issued a September 1995 adverse notice of determination in which it assessed a use tax of $48,000, plus $64,313.42 accrued interest, on the Hail Bold King purchase, and a notice of redetermination in which it assessed a sales tax of $516,750, plus $708,648.86 accrued interest, in the Desert Wine matter. Plaintiff paid the use tax and accrued interest assessed on the Hail Bold King purchase and filed a superior court action for refund of those sums. He also filed this action. The first, and only, cause of action in plaintiff's original complaint sought a declaratory judgment that the Board "must (1) refrain from requiring payment of interest prior to acting upon a refund request in those circumstances when the Sales or Use Tax has been paid in full, and (2) order that the [Board] segregate or immediately return to Plaintiff the $64,313.42 in interest paid by Plaintiff for the Hail Bold King assessment, and accrued interest therein. [*Sic*]."

In the Desert Wine matter, plaintiff paid the assessed sales tax, but not the accrued interest on that tax, filed a sales tax refund claim with the Board, and when that was denied filed a superior court refund action. He then

---

[3] A use tax is payable when an article is purchased out of state with the intent to bring the article into California. (§ 6201.) The sales and use taxes "are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question" (*Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60, 66 [219 Cal.Rptr. 142, 707 P.2d 204]), but the sales tax is levied on freedom to purchase while the use tax is on the enjoyment of the item purchased. (*Ibid.*) "The use tax supplements the sales tax by imposing on those subject to it the same tax burden as would otherwise be assessed under the sales tax. [Citation.] For example, the use tax generally applies where a particular transaction is exempt from sales tax, such as one involving goods purchased in another state and stored or used in California." (*Id.* at p. 67.)

amended his complaint in this action to add a second cause of action based on the Desert Wine tax assessment, alleging that he was unable to pay the interest. The second cause of action sought a declaratory judgment that the Board "must (1) refrain from requiring payment of interest prior to acting upon a refund request in those circumstances when the Sales or Use Tax has been paid in full, as it was in this case." The prayer of the amended complaint sought a declaration that the Board could not require payment of the interest portion of a sales or use tax determination as a condition precedent to acting on a taxpayer's request for refund; a declaration that the Board had to act on the refund request for the tax and interest in the Hail Bold King assessment; a declaration that the Board had to act on the refund request for the Desert Wine assessment; a declaration that the Board improperly collected the Hail Bold King interest; an order directing segregation or return of the Hail Bold King interest pending Board action on the refund request; interest on that sum, and costs and attorney fees.

The Desert Wine administrative sales tax refund claim was denied by operation of law when the Board failed to act on the claim within six months. (§ 6934.) A superior court action to compel refund of that tax was then filed. The action for refund of the Hail Bold King tax and interest was dismissed on the sustaining of the Board's demurrer without leave to amend, and is now being appealed.

The Board had demurred to the amended complaint for declaratory relief in this action on the ground that neither cause of action stated facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)) because they were barred by article XIII, section 32 of the California Constitution (article XIII, section 32) and section 6931, and because plaintiff failed to exhaust administrative remedies before filing this action.

In support of the demurrer the Board contended that article XIII, section 32 and section 6931 preclude lawsuits which prevent or enjoin the collection of the sales and use taxes, and that exhaustion of administrative remedies was required because a tax refund action is the exclusive means of obtaining judicial review of state tax proceedings. Relying on *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 838 [258 Cal.Rptr. 161, 771 P.2d 1247], the Board argued that an action for declaratory relief was encompassed by the bar of article XIII section 32, and that *State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 638 [217 Cal.Rptr. 238, 703 P.2d 1131], confirmed that a postpayment refund action is the sole legal avenue

for resolution of tax disputes. The Board reasoned that by mandating payment of interest on delinquent taxes in section 6591,[4] the Legislature manifested an intent that interest be part of the tax. Therefore, since plaintiff was attacking the validity of the interest assessment, this action constituted a piecemeal attack on one aspect of the tax itself, and was a prohibited attempt to prevent or enjoin collection of a tax. The Board argued further that no provision of law sanctioned a temporary refund of interest pending determination of the appropriateness of a tax.

In opposition to the demurrer, plaintiff conceded that after an adverse notice by the Board a taxpayer has no further relief until the tax is paid (§ 6932), and that after payment of the tax must file a claim for refund with the Board before initiating litigation to recover a tax that allegedly has been wrongfully paid or collected. (§§ 6932, 6933.) Plaintiff disclaimed any intent to challenge the propriety of any tax imposed on him, however, stating that he sought only to determine the legality of the Board's position that a tax may not be challenged or refunded unless both the tax and the accrued interest have been paid in full. Plaintiff conceded that the Court of Appeal has held that the policy underlying the requirement that the tax be paid prior to litigating its propriety is important to public welfare and vital to the existence of a government. (*People* ex rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 542 [210 Cal.Rptr. 695].) He argued nonetheless that neither article XIII, section 32 nor the statutes barring actions to determine the propriety of a tax before payment extend the rule to interest assessed against a delinquent taxpayer. In support of his assumption that the Legislature did not intend the bar to pre-payment sales and use tax litigation to include prepayment of accrued interest, he argued that the Legislature has demonstrated its understanding that an express requirement that interest be prepaid is necessary by expressly making prepayment of interest on a required contribution to the Unemployment Fund a prerequisite to litigation over those assessments.[5]

The superior court sustained the demurrer without leave to amend and entered judgment dismissing the action. Plaintiff appealed.

[4]Section 6591, subdivision (a): "Any person who fails to pay any tax to the state or any amount of tax required to be collected and paid to the state . . . within the time required shall pay a penalty of 10 percent of the tax or amount of the tax, in addition to the tax or amount of tax, plus interest at the modified adjusted rate per month, or fraction thereof, established pursuant to Section 6591.5, from the date on which the tax or the amount of tax required to be collected became due and payable to the state until the date of payment."

[5]Unemployment Insurance Code section 1178, subdivision (d): "Following a final decision denying a petition for reassessment . . . the employing unit or . . . a party to the petition may file a claim for refund upon payment of the amount of the assessment, including interest and penalties, and thereafter may pursue all administrative and judicial review rights . . . ." This subdivision was added in 1986 (Stats. 1986, ch. 89, § 3, p. 220, eff. May 13, 1986), however, long after the enactment of section 6931 in 1941. (Stats. 1941, ch. 36, § 1, p. 554.)

The Court of Appeal disagreed with the trial court's implicit conclusion that the action was barred because plaintiff sought to enjoin or prevent collection of a tax. It reasoned that the complaint sought only to determine the validity of the Board's long-standing de facto policy of requiring prepayment of interest as well as delinquent taxes as a precondition to consideration of a refund claim. It relied for that approach on this statement in *Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 236 [104 Cal.Rptr. 558]: "The policy behind Revenue and Taxation Code section [6931] proscribes *judicial interference* in the tax collection process. No sound reason appears why an interested party should not have the question of a tax regulation's validity determined, so long as the tax collector is not hindered in his duties thereby. State and federal courts are frequently, in one way or another, passing upon the validity of tax regulations after payment of the required tax. These determinations then affect taxpayers and tax collections in other pending and future cases. Rather than an impediment, such decisions must be considered as in aid of tax collection, for they tend to add certainty and conclusive legality to the process. . . ." (Original italics.)

Having concluded that this action was one which sought only to determine the validity of a tax regulation or policy, the Court of Appeal addressed the nature of interest on accrued taxes and concluded that interest is not an integral part of a tax. Neither the Constitution nor any statute described it as such or implied that interest should be considered part of a tax for purposes of prelitigation payment or otherwise, and no reported decision so held. The Court of Appeal acknowledged the then recent decision in *Garg* v. *People* ex rel. *State Bd. of Equalization* (1997) 53 Cal.App.4th 199 [61 Cal.Rptr.2d 376] (*Garg*), which held that litigation expenses awarded a taxpayer were not properly applied to offset sales or use taxes owed, but found *Garg* unpersuasive. It also found unpersuasive the suggestion in 11 Lane, California Practice (2d ed. 1987) Procedure and Administration, section 296, page 268, the only treatise to consider the issue, that "probably" interest as well as tax and penalty must be paid before a claim and suit for refund are filed. That statement was not supported by authority.

On the other hand, the Court of Appeal found "illuminating" a 1977 legal ruling of the Franchise Tax Board concluding that payment of accrued interest was not a prerequisite to a valid claim for refund predicated on overpayment of income tax and/or penalties.[6] The "unsupported dicta" in *Garg*, the court concluded, had not superseded that ruling.

---

[6]That ruling, Franchise Tax Board Legal Ruling No. 402, since superseded by a Franchise Tax Board ruling adopting *Garg*, stated in pertinent part: "Payment of assessed interest is not a necessary element to a claim for re-fund predicated upon the overpayment of tax and/or

Therefore, the Board's policy requiring prepayment of accrued interest as a condition to consideration of an administrative tax refund claim was unauthorized by either the Constitution or any statute. Even assuming the statutes were ambiguous, the court would be compelled to adopt a construction favorable to the taxpayer. (*Edison California Stores* v. *McColgan* (1947) 30 Cal.2d 472, 476 [183 P.2d 16].) The court therefore reversed the judgment of dismissal and remanded the matter to the trial court.

II

*Discussion*

The Board argues here, as it did below, that accrued interest on a sales and use tax deficiency is an integral part of the tax which, pursuant to article XIII, section 32 and section 6931, must be paid before a legal action challenging a tax assessment may be brought. Therefore, it follows that the Board's policy of requiring payment of interest before it will consider an administrative claim for refund of a tax is valid. The unstated assumption is that the availability of an administrative claim process should not be permitted to delay the collection of revenues that would have been available to the state when the tax became due and payable if there were no administrative claim process.

Plaintiff does not dispute the authority of the Board to demand payment of the tax before an administrative claim for refund is considered. He argues, however, that the Board's assumption that interest is part of the tax is not supported by the authorities on which it relies. Therefore, since neither article XIII, section 32 nor section 6931 mandates payment of accrued interest as a precondition to actions challenging tax assessments, the Board lacks authority to make payment of interest a precondition to its consideration of an administrative claim for refund of sales and use taxes.

A. *Preliminary Issues: Exhaustion of Administrative Remedies/Mootness.*

Before addressing the dispositive issues of whether interest on delinquent sales and use taxes is part of the tax assessed or for any other reason is within the bar to pre-payment litigation established by article XIII, section

---

penalties for any particular year . . . . [¶] A protest or appeal of a deficiency may be recharacterized as a claim for refund if the statutory requirements of Revenue and Taxation Code Sections 19061.1 and 27068 are satisfied. These sections provide that in order for the change in status to take place the taxpayer must pay the tax protested. Based on the foregoing analysis with respect to the requirement for a 'valid claim,' the phrase 'tax protested' means the entire tax and penalties assessed or asserted for the year, but *does not include any accrued interest.*" (Italics added.)

32 and section 6931, we address and reject the Board's claim that this action should not proceed because plaintiff failed to exhaust his administrative remedies before filing the declaratory relief action.

Because the Board had not yet ruled on plaintiff's refund requests, arguably his declaratory relief action was premature. However, it was so only insofar as it sought a refund of taxes and, if interest is an integral part of the tax, possibly was also premature in its attempt to enjoin the Board from requiring payment of interest as a precondition to consideration of his refund claim. To the extent that the complaint sought a judicial determination of the validity of the Board's interest prepayment policy it did not involve any issue subject to determination through the administrative refund remedy available to plaintiff.

The Board also argues that since plaintiff's administrative refund claims have now been denied, his sole remedy is the refund action authorized by section 6933.[7] As the Court of Appeal recognized, plaintiff has filed actions in the superior court seeking a refund of the taxes and interest he has paid thus far. Therefore, because both administrative refund claims have been denied by the Board and plaintiff has filed actions in the superior court for return of the amounts paid, to the extent his action sought injunctive relief against the requirement that interest be paid before his administrative refund claim would be considered, the action is moot, as is that part of the action seeking segregation and/or return of the amounts paid.

Shorn of those aspects, the declaratory relief action is viable. As the Court of Appeal recognized, the only relief now available to plaintiff in this action is a declaration of the validity of the Board's policy of requiring payment of accrued interest on a tax deficiency before it will consider a refund claim. That issue is not one that could be raised in the pending superior court actions since only grounds set forth in the administrative refund claim may be asserted in those actions. (§ 6933.)

Thus, consideration of the validity of the Board policy, a question properly raised through a declaratory relief action (Gov. Code, § 11350, subd. (a); *Pacific Motor Transport Co.* v. *State Bd. of Equalization, supra,* 28 Cal.App.3d at pp. 237-238), is not barred either by article XIII, section 32 as one to enjoin collection of a tax or by a failure to exhaust administrative remedies. The question is properly before this court.

We therefore consider whether the Court of Appeal erred in holding that neither article XIII, section 32 nor section 6931 mandates payment of

---

[7]Section 6933: "Within 90 days after the mailing of the notice of the board's action upon a claim . . . the claimant may bring an action against the board on the grounds set forth in the claim in a court of competent jurisdiction . . . ."

interest accrued on a sales and use tax deficiency as a precondition to consideration of an administrative claim for refund of taxes and, if not, whether the Board's policy of requiring prepayment of interest is invalid as an unauthorized burden on a taxpayer's right to claim a refund of taxes.[8]

### B. *The Board's Rulemaking Authority.*

The Legislature has granted the Board the power to make all rules necessary to administer and enforce the Sales and Use Tax Law. (§ 7051.) However, an administrative regulation must "be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law." (Gov. Code, § 11342.1.) "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11342.2.)

Even apart from these statutory limits, it is well established that the rulemaking power of an administrative agency does not permit the agency to exceed the scope of authority conferred on the agency by the Legislature. (*California Emp. Com.* v. *Kovacevich* (1946) 27 Cal.2d 546 [165 P.2d 917].) "A ministerial officer may not . . . under the guise of a rule or regulation vary or enlarge the terms of a legislative enactment or compel that to be done which lies without the scope of the statute and which cannot be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute." (*First Industrial Loan Co.* v. *Daugherty* (1945) 26 Cal.2d 545, 550 [159 P.2d 921].) And, a regulation which impairs the scope of a statute must be declared void. (*Association For Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

These rules are equally applicable to an administrative agency policy which has the effect of a regulation. An agency may not exceed the limits of its authority by adopting and enforcing a policy which would not be permitted as a formally adopted regulation. We therefore approach the prepayment of accrued interest policy of the Board in the same manner we would if the policy were a regulation, with one significant difference. We are not limited to determining whether the policy followed here is arbitrary or

---

[8]We have no occasion here to consider whether the Board may require prepayment of interest as a precondition to consideration of a challenge directed only to an interest assessment.

capricious or necessary to effectuate the purpose of the Sales and Use Tax Law. We decide, as a question of law, whether the Board's prepayment policy is a proper interpretation of the Constitution and the statutes governing prepayment of tax as a condition to an action challenging the assessment of the tax. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

In assessing the validity of a formal regulation "the judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, [former] § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute.' (Gov. Code, § 11374)." (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687], fn. omitted.) However, "[w]here the Board has not adopted a formal regulation addressing a particular tax question, its interpretation of the statutes and existing regulations in assessing taxes due is subject to broad judicial review. . . . [¶] When the validity of a formal regulation is attacked, . . . a more limited standard of judicial review applies." (*Wallace Berrie & Co.* v. *State Bd. of Equalization, supra,* 40 Cal.3d at p. 65.) When an administrative agency construes a statute in adopting a regulation or formulating a policy, the court will respect the agency interpretation as one of several interpretive tools that may be helpful. In the end, however, "[the court] must . . . independently judge the text of the statute." (*Yamaha Corp. of America* v. *State Board of Equalization* (1998) 19 Cal.4th 1, 7-8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Because the policy at issue here is not a formally adopted regulation, and the Board does not claim that its interest prepayment policy constitutes a long-standing administrative construction of either article XIII, section 32 or section 6931, we need not defer to any administrative understanding of the meaning of those provisions. We determine independently whether the requirement that interest as well as the tax be paid before a refund claim is inconsistent with either article XIII, section 32 or section 6931.

C. *The Constitutional Bar to Pre-payment Tax Litigation: Construing Article XIII, Section 32 and Its Predecessors.*

■ As noted above, the Board argues that accrued interest is part of a tax within the meaning of article XIII, section 32 and thus falls within the constitutional bar to pre-payment litigation. It relies for that proposition on *Garg,* the authorities on which the Court of Appeal relied there, and the public policy underlying the bar to pre-payment litigation—the need "to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463].)

The difficulty with the Board's argument is that article XIII, section 32 unambiguously states that an action may be maintained after payment of "a *tax* claimed to be illegal" and makes no mention of interest on the tax. It deprives a court of jurisdiction only to "prevent or enjoin the collection of any *tax*." (*Ibid.,* italics added.) ■ When the language of a statute or constitutional provision is clear and unambiguous, judicial construction is not necessary and the court should not engage in it. (*Ventura County Deputy Sheriffs' Assn.* v. *Board of Retirement* (1997) 16 Cal.4th 483, 492-493 [66 Cal.Rptr.2d 304, 940 P.2d 891]; *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ The Board contends that the word "tax" used in article XIII, section 32 is a global reference to the entire universe of items that may accompany a tax, in particular interest and penalties. The history of article XIII, section 32 does not support this conclusion, however. Rather, it suggests that, because interest on delinquent taxes was not authorized when the prepayment bar to tax litigation was adopted, the drafters of article XIII, section 32 did not consider and did not intend to include interest accrued on a delinquent tax in the prepayment of tax condition to litigation challenging the tax assessment.

■ The common law rule appears to have been that "interest is an accretion or increment to the principal fund earning it, and unless lawfully separated therefrom becomes a part thereof." (*Pomona City School Dist.* v. *Payne* (1935) 9 Cal.App.2d 510, 516 [50 P.2d 822]; *Lawson* v. *Baker* (Tex. Civ.App. 1920) 220 S.W. 260, 272; cf. *Estate of Sharp* (1971) 18 Cal.App.3d 565, 585 [95 Cal.Rptr. 816] [common law rule does not support compounding interest].) ■ However, whether delinquent taxes bear interest is, and in this state, has always been a legislative question and, as discussed in the next part, the Legislature has not indicated an understanding that when interest is authorized, the interest invariably becomes part of the tax for all purposes.

Article XIII, section 32 itself does not make interest a part of a tax. The first statute governing taxes imposed a percentage of the tax as damages and a separate penalty for delinquency, but did not provide for accrual of interest on the tax. (Stats. 1850, ch. 52, §§ 39, 40, 42, 52, pp. 139-140.) The Revenue Act of 1857 authorized only a 5 percent charge imposed as damages. (Stats. 1857, ch. 261, § 13, p. 331.) The charge was "not an equivalent for the tax, or a substitute for it, or a sum fixed, by the payment of which an atonement is made for the default to pay the tax, but [was] one of the means prescribed for obtaining the tax itself by presenting an inducement to make voluntary payment on or before the day fixed for that purpose." (*High* v. *Shoemaker*

(1863) 22 Cal. 363, 370.) Unless the percentage was statutorily authorized it was impermissible to collect it or include it in the amount for which property could be sold under a tax lien. (*Bucknall* v. *Story* (1868) 36 Cal. 67, 72.)

The taxation provisions of the Political Code of 1872 continued imposition of a "percentage" on delinquent real and personal property taxes. Section 3756 of that code provided: "On the first Monday in January of each year, all unpaid taxes are delinquent, and thereafter the Tax Collector must collect for the use of the county an addition of five per cent."

Interest on delinquent taxes, as contrasted with the percentage, was initially authorized only in cases in which the tax collector found no means by which to collect the tax, such as by a sale of property subjected to a tax lien. Interest did not accrue on the initial delinquency, however. (Pol. Code of 1872, § 3803; *Harper* v. *Rowe* (1878) 53 Cal. 233, 236.)[9] In 1883 the Legislature added section 3817 to the Political Code to require payment of interest on delinquent taxes as well as the taxes in order to redeem property sold to the state for delinquent taxes. (Stats. 1883, ch. 16, § 1, p. 23.)

Also, in 1883, before the first constitutional bar to pre-payment tax litigation was adopted, a statutory bar was enacted as section 3669 of the Political Code. (Stats. 1883, ch. 40, § 6, p. 70.) That section authorized a person dissatisfied with a state tax assessment "upon the payment of the *taxes* due upon the assessment complained of, and the [percentage] added, if to be added" to sue for refund. (*Ibid.,* italics added.) That section was among several enacted between 1880 and 1905 to implement the process of state taxation of property that, before the adoption of the Constitution of 1879, had been taxed by counties. (*Westinghouse Electric Co.* v. *Chambers* (1915) 169 Cal. 131, 141 [145 P. 1025].) At the time of its enactment the Legislature could not have contemplated prepayment of interest as well as the tax since, except as described above, interest did not accrue on delinquent taxes.

A predecessor to article XIII, section 32 was added to the Constitution of 1879 in 1910 as subdivision (g) of former article XIII, section 14, the section which then governed the taxation of certain railroad property, telegraph companies, and financial institutions. At that time Political Code section 3668, which, like Political Code section 3669, had been enacted in 1883, provided that, if a tax on railroad property was not paid by the last Monday in December, 5 percent was to be added and the treasurer was to collect the tax and the 5 percent which was to be set aside to pay the cost of actions

---

[9]The Inheritance Tax Act of 1893 (Stats. 1893, ch. 168, § 4, p. 194) was similar, providing for interest to be charged only if the tax was not paid within 18 months.

against delinquent taxpayers. (Stats. 1883, ch. 40, § 5, p. 69.) Again, there was no provision for either accrual or collection of interest at that time.

Before the first constitutional bar to pre-payment tax litigation was adopted, this court had recognized that the percentage imposed on delinquent railroad taxes was not interest. In an action by the Board to collect delinquent taxes from a railroad, we held that the trial court erred in including interest on the amount of tax. The 5 percent penalty authorized by section 3668 of the Political Code was the only penalty provided by statute. Collecting interest was not permitted because "[t]axes do not bear interest unless it is expressly given by statute . . . ." (*People* v. *Central Pacific R.R. Co.* (1895) 105 Cal. 576, 595 [38 P. 905].)

That was the state of the law when former article XIII, section 14, subdivision (g) of the California Constitution was enacted in 1910. This early constitutional bar to pre-payment litigation provided: "No injunction shall ever issue in any suit, action or proceeding in any court against this state or against any officer thereof to prevent or enjoin the collection of any tax levied under the provisions of this section; but after payment action may be maintained to recover any tax illegally collected in such manner and at such time as may now or hereafter be provided by law." (Cal. Const., former art. XIII, § 14, subd. (g), set forth in Stats. 1911, 2d Ex. Sess., 1910, p. 20.) No mention was made of the percentage, although Political Code section 3669 did require payment of the percentage. A second, identical, constitutional bar to pre-payment tax litigation was added to the Constitution in 1926 in former article XIII, section 15, which governed highway transportation companies.

In 1933, former article XIII of the California Constitution was again amended. A new section 15 set aside revenue from state taxes to support the public school system and the university. The ban on pre-payment litigation was continued in section 15, but now applied to all taxes imposed under former article XIII. This third paragraph of former article XIII, section 15, read: "No injunction or writ of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court against this State, or any officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of this article; but after payment thereof action may be maintained to recover, with interest, in such manner as may be provided by law, any tax claimed to have been illegally collected." (Stats. 1935, p. lxix.)

Finally, in 1974, the ban on pre-payment litigation became section 32 of present article XIII, in a legislative constitutional amendment (Proposition 8)

which was part of an ongoing effort of the Constitution Revision Commission to update and rewrite the California Constitution. The purpose of Proposition 8 was explained by the Legislative Analyst: "It deletes obsolete provisions, clarifies wording, eliminates excess verbiage, and establishes a logical order for the article's provisions." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1974) Analysis of Prop. 8, p. 30.) Other changes in the tax scheme were described. None related in any way to what became section 32 of article XIII. The argument in favor of the proposition by the chairman of the Constitution Revision Commission, the chairman of the Assembly Committee on Revenue and Taxation, and the president of the League of Women Voters, stated that the proposition shortened article XIII by 8200 words, but "makes only technical changes in the Constitution and clarifies the meaning of existing sections. [¶] . . . [¶] The purpose of this amendment is not to make a change in our present tax structure, but to make the Constitution more readable and workable." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1974) argument in support of Prop. 8, p. 30.) Thus, there was no intent to change the previous meaning of the pre-payment bar to tax litigation.

Nothing in the history of article XIII, 32 supports the argument that the constitutional references to "tax" encompass interest as an integral part of the tax, and that article XIII, section 32 mandates prepayment of interest as well as taxes as a prerequisite to a challenge to the validity of a tax assessment or the amount thereof. When the first statute barring pre-payment tax litigation was enacted, interest did not accrue on delinquent taxes. The same was true when the first constitutional pre-payment bar was adopted. Therefore, the drafters and the electorate had no reason to consider interest as an "integral part" of the tax to which article XIII, section 32 refers or to consider whether prepayment of interest should also be made a condition to tax litigation in article XIII, section 32. Having left the question of whether interest should accrue on delinquent tax assessments to the Legislature, the drafters also left to that body the question of whether prepayment of interest as well as tax should be a condition to an action challenging a sales and/or use tax.

From 1910 to the present, the Constitution has provided only that the tax must be paid. It now states unambiguously that a refund action may be maintained "[a]fter payment of a tax." (Art. XIII, § 32.) Since the language is clear and any ambiguity would have to be resolved in favor of the taxpayer (*Edison California Stores* v. *McColgan, supra,* 30 Cal.2d at p. 476), article XIII, section 32 may not be construed, as the Board would have it, to require prepayment of accrued interest as well as the tax as a condition to

litigation challenging the tax. "[C]ourts, in interpreting statutes levying taxes, may not extend their provisions, by implication, beyond the clear import of the language used, nor enlarge upon their operation so as to embrace matters not specifically included." (30 Cal.2d at p. 476.)

D. *The Statutory Bar to Pre-payment Tax Litigation: Section 6931 and Its Predecessors.*

 Because article XIII, section 32 does not mandate payment of interest as well as tax prior to challenging the validity of a tax assessment, and the accrual of interest on delinquent sales and use taxes is legislatively, not constitutionally, mandated, we next consider the Sales and Use Tax Law to determine whether, in section 6931, the Legislature has made payment of accrued interest as well as a delinquent tax a condition to an action challenging the validity of the tax. Since section 6931, although worded somewhat differently, mirrors the first sentence of article XIII, section 32 and, like article XIII, section 32 mentions only "tax," it is doubtful that the Legislature intended the scope of the statutory bar to be broader than that of the constitutional bar. We shall, nonetheless, examine the Sales and Use Tax Law in an effort to ascertain the legislative intent with regard to interest.

To do so we first summarize the interest-related provisions of the Sales and Use Tax Law.

When a sales or use tax is not paid on time, the taxpayer must "pay a penalty of 10 percent of the tax or amount of the tax, in addition to the tax or amount of tax, plus interest . . . ." (§ 6591.) If the Board is not satisfied with a taxpayer's return it may determine the proper amount of tax (§ 6481), which bears interest, as does the amount the Board determines is payable by a taxpayer who fails to file a return. (§§ 6482, 6513.) Interest "in addition to the tax" is also payable by a person to whom an extension of time to file or pay taxes is granted. (§ 6459, subd. (a).) Persons required to make prepayment of taxes who fail to do so must also pay interest on the amount due. (§§ 6480.4, 6480.8, subd. (c).)

The Board is authorized to grant relief from interest only when the failure to file a timely return or make timely payments is caused by a disaster (§ 6593) or the failure is somehow attributable to actions of employees of the Board or the Department of Motor Vehicles in calculating a use tax. (§§ 6593.5, subd. (a)(1), (2), 6596, subd. (a).)

Of particular note is the Legislature's treatment of interest as a distinct item in the sections of the Sales and Use Tax Law which govern the

collection of delinquent taxes. Those provisions uniformly identify taxes, penalties, and interest as items to be recovered. These statutes refer to "tax or interest," or make express reference to interest in addition to the unpaid tax on which it has accrued when identifying an amount to be collected, a tax lien to be imposed, or disposition of sums collected. Section 7101 provides that "[a]ll fees, *taxes, interest, and penalties* imposed and all amounts of tax required to be paid to the State" be paid to the Board and thereafter transmitted to the State Treasurer. (Italics added.) Under section 6596, subdivision (a), if the failure to make a timely return or payment is attributable to the taxpayer's reasonable reliance on written Board advice, "the person may be *relieved of the taxes* imposed . . . and any penalty *or interest added thereto.*" (Italics added.)

The Board may require a person to turn over property as security for compliance with the law and may sell the security at auction if necessary to recover "*any tax or* any amount required to be collected, *interest*, or penalty due." (§ 6701.) The Board may levy on property held by third persons and owed to a delinquent taxpayer to secure "*tax, interest, or penalties* due." (§ 6703, subd. (a).) Section 6711 authorizes a suit "to collect the *amount delinquent together with penalties and interest.*" When a tax has not been paid, section 6736 permits the Board to file a certificate "specifying the *amount required to be paid, interest and penalty* due," with a request that judgment be entered "in the amount required to be paid, together with *interest and penalty* as set forth in the certificate." Upon the filing, the county clerk must enter judgment "in *the amount required to be paid, together with* interest and penalty." (§ 6737.) The judgment may be filed as a lien (§ 6738) and "[t]he *amounts required to be paid . . . together with interest and penalties*" are given priority as a lien under the circumstances specified in section 6756. When a tax is not paid, the amount due, "*including penalties and interest . . .* shall thereupon be a perfected and enforceable state tax lien." (§ 6757, subd. (a).) In addition, property seized from a delinquent taxpayer is to be sold at auction "to pay the amount due *together with any interest or penalties . . . .*" (§ 6796.) (All italics added.)

Section 6901, subdivision (a), provides for refund of "any *amount, penalty, or interest*" paid more than once or erroneously or illegally collected, on a determination by the board that "[a]ny *amount of tax, interest, or penalty* was not required to be paid." Section 7156, subdivision (a)(1), (2), authorizes an award of costs to the prevailing party in a civil action against the state for "collection, or refund of any *tax, interest, or penalty . . . .*" Section 6902.3 creates a three-year period within which to claim a refund of overpayment of "any *tax, penalty, or interest*" collected by levy. (All italics

added.) In sum, in these statutes the Legislature consistently identifies interest as an item distinct from the tax on which it accrues.[10]

Section 6931 states only that a court may not "prevent or enjoin the collection under this part of any *tax* or any amount of *tax* required to be collected." (Italics added.) Additionally, the statutory definitions of "[s]ales tax" and "[u]se tax" refer only to "the *tax* imposed" by chapters 2 and 3 of the Sales and Use Tax Law, respectively. (§§ 6003, 6004.) (Italics added.) Section 6757, creating a lien, does not refer to the unpaid tax, but to the "amount . . . including penalties and interest, together with any costs" becoming enforceable as a state tax lien. Again, in specifying the scope of the lien, the Legislature has made express reference to interest as part of the total "amount" of the lien, rather than simply specifying that the unpaid tax becomes a lien.

The legislative distinction between tax, interest, and penalty in the wording of the Sales and Use Tax Law is not new. It was carried over in the codification of the predecessor Retail Sales Act of 1933 (Stats. 1933, ch. 1020, § 1, p. 2599) and the Use Tax Act of 1935 (Stats. 1935, ch. 361, § 1, p. 1297).[11] Both of these acts imposed interest on delinquent taxes, the Retail Sales Act of 1933 in section 22 (Stats. 1933, ch. 1020, § 22, p. 2606), and the Use Tax Act of 1935 in section 16 (Stats. 1935, ch. 361, § 16, p. 1304). Both acts included a predecessor to section 6931, which referred only to "tax" and made no mention of interest. Section 31 of the Sales Tax Act of 1933 provided that there could be no action "to prevent or enjoin under this act the collection of any tax sought to be collected; but after payment of any such tax under protest . . ." the retailer was permitted to bring an action for "the recovery of tax so paid under protest." (Stats. 1933, ch. 1020, § 31, p. 2610.) Section 29 of the Use Tax Act of 1935 was identical. (Stats. 1935, ch. 361, § 29, pp. 1310-1311.)

We construe section 6931 in light of this history as well as the language chosen by the Legislature to describe the condition to pre-payment litigation of the validity of a sales or use tax. In so doing, we start with three fundamental rules of statutory construction. ▮ First, as we noted in reference to article XIII, section 32, if a statute is unambiguous, there is no

---

[10]Section 6456, subdivision (a)(3), by contrast, does refer to "liability for tax (including interest, penalties, and other amounts)" as the liability of which one spouse is relieved when the deficiency is the fault of the other. The words "including interest" may refer back to "tax" rather than "liability," but this ambiguous reference does not persuade us that the Legislature, which elsewhere repeatedly distinguishes tax and interest, invariably considers interest to be an integral part of a tax or did so when section 6931 was enacted.

[11]See, e.g., Retail Sales Act of 1933, sections 22, 23, 26, 29 (Stats. 1933, ch. 1020, §§ 22, 23, 26, 29, pp. 2606, 2607-2608, 2609-2610.)

need for construction, and the court should not indulge in it. (*Ventura County Deputy Sheriffs' Assn.* v. *Board of Retirement, supra,* 16 Cal.4th at pp. 492-493.) Second, if there is ambiguity in a tax statute, the ambiguity must be resolved in favor of the taxpayer. (*Edison California Stores* v. *McColgan, supra,* 30 Cal.2d at p. 476.) Third, whenever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage. (*Woolsey* v. *State of California* (1992) 3 Cal.4th 758, 775-776 [13 Cal.Rptr.2d 30, 838 P.2d 758]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ Section 6931 is not ambiguous. It states that a court may not prevent collection of a "tax." Moreover, as we have shown above, in the Sales and Use Tax Law and predecessor statutes, the Legislature has made express reference to interest when interest is to be collected or refunded.[12] Were we to accept the Board's argument that interest is part of a tax, we would, in effect render surplusage the word "interest" in many of the statutes in which the Legislature has referred both to interest and tax.

The Board makes no attempt to analyze the issue under standard rules of statutory construction or to explain why the Legislature would selectively omit "interest" in section 6931 when the word is used repeatedly in other parts of the Sales and Use Tax Law. Instead, it argues that since the Legislature specified that interest is to be collected in the collection provisions of the Sales and Use Tax Law (§§ 6736, 6737, 6740, 6757, 6796), it intended that interest be collected as part of the tax.

In support of its argument that interest is inherently a part of a tax, the Board relies on *Garg* and several decisions which it urges have a consistent theme that, since interest and penalties are derived from a tax, interest and penalties are part of the tax. None of the cases address whether the Legislature intended to treat interest as part of the tax in section 6931. All are distinguishable.

*Weston Inv. Co.* v. *State of California* (1948) 31 Cal.2d 390 [189 P.2d 262], considered only whether a "redemption penalty" which must be paid as a condition of redeeming property that has been sold to the state for failure to pay real property taxes was part of the tax. We concluded that these

---

[12]Subdivision (d) of Unemployment Insurance Code section 1178, which requires payment of interest as well as contributions prior to pursuing administrative or judicial remedies, was not enacted until 1986. (Stats. 1986, ch. 89, § 3, p. 220.) Therefore, although the Legislature demonstrated there that it knew how to mandate prepayment of interest as well as taxes, we do not find that persuasive in determining the intent of the Legislature 45 years earlier when section 6931 was enacted. (Stats. 1941, ch. 36, § 1, p. 554.)

penalties were simply a charge for exercise of the privilege of redeeming sold property, not part of the tax. While we stated in passing that "[t]here can be no question that delinquent penalties are a part of the tax," we also said that "together with the tax" they became part of the tax lien and noted that sections 2617 and 2618 provided that a delinquent penalty "attaches to" those taxes. (*Weston Inv. Co.* v. *State of California, supra,* 31 Cal.2d at p. 393.) The dictum on which the Board relies does not support a conclusion that, for purposes of section 6931, interest is inherently a part of the tax which must be paid prior to the initiation of a refund action or challenge to the assessment.

Indeed, this court held many years ago that interest is not an inherent part of a tax when it held in *Long Beach City School Dist.* v. *Payne* (1933) 219 Cal. 598, 601 [28 P.2d 663]: "The general rule is that the penalties follow the tax. This rule is stated with supporting authorities in 61 C. J., at pages 1528 and 1529, as follows: 'Unless otherwise directed, interest, penalties, and costs collected on delinquent taxes follow the tax . . . . But the legislature may change this rule and dispose otherwise of interest or penalties. A statute for the distribution of interest and penalties collected in a different manner from the disposition of taxes on which the interest and penalties are based does not amount to the application of the taxes to objects other than for which they were imposed.' "

*People* v. *Pacific Employers Ins. Co.* (1973) 36 Cal.App.3d 296, 300 [111 Cal.Rptr. 350], cited *Weston Inv. Co.* v. *State of California, supra,* 31 Cal.2d at page 393, as authority for its statement that penalties and interest related to failure to pay sales taxes "are treated as part of the tax arising from those transactions." There, however, the court was interpreting a surety contact under which the security had agreed to pay all sales and use taxes "including interest penalties and costs due and not paid" by the delinquent taxpayer. (36 Cal.App.3d at p. 298.) The court concluded that the surety had agreed to be liable for the penalties and interest at issue. Notwithstanding the citation to *Weston Inv. Co.* v. *State of California, supra,* 31 Cal.2d 390, which, as discussed, does not support the Board, the court did not hold that interest inherently was part of the tax.

The question in *Sonleitner* v. *Superior Court* (1958) 158 Cal.App. 2d 258 [322 P.2d 496] was whether, in an action by the Board to recover unpaid sales tax with penalties and interest, the defendant unlicensed distributor of gasoline was entitled to a jury trial. The court held that actions for the collection of taxes were not equivalent to those for collection of a debt and that the statutory authority under which the Attorney General was authorized to prosecute " 'an action at law' to collect the license tax, penalty and

interest" did not establish a right to jury trial when the form of the action was one to collect taxes. (*Id.* at p. 262.) In that context, again citing *Weston Inv. Co.* v. *State of California, supra,* 31 Cal.2d at page 393, the court said that the action was not one to collect a penalty as "[i]t is well settled in this state that a penalty which is created by statute for failure to pay a tax assessment becomes part of the tax." (158 Cal.App.2d at p. 263.) While that may be true for purposes of collection, again, like the other cases on which the Board relies, *Sonleitner* v. *Superior Court, supra,* 158 Cal.App.2d 258, did not consider whether for purposes of the prepayment requirement of section 6931, the Legislature intended that interest be deemed part of the tax. "It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court." (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1071 [255 Cal.Rptr. 352, 767 P.2d 619].)

*Camden Fire Ins. Assn.* v. *Johnson* (1941) 42 Cal.App.2d 528 [109 P.2d 447] is even less helpful to the Board. There the taxpayer insurance company had paid, under protest, delinquent taxes and a penalty imposed under a section of the Political Code which was then in force. It sued for refund of the penalty on the ground that while it had mailed a check for the taxes in a timely manner, the payment was misdirected, thereby causing the delinquency. The Court of Appeal, adopting the opinion of the trial court, acknowledged authority for the proposition that penalties become part of a tax, but rejected the suggestion that, as such, the penalty might be forgiven. The court distinguished penalty and tax and held that the governing statute left a court without power to forgive a penalty. (*Id.* at pp. 529-531.) Thus, rather than supporting the Board, this decision illustrates judicial deference to a legislative determination that penalties should not become part of a delinquent tax for all purposes.

That leads us to *Garg, supra,* 53 Cal.App.4th 199, the most recent of the decisions on which the Board relies. *Garg* arose out of an action brought by two taxpayers to compel the Board to pay litigation expenses that had been awarded to them pursuant to section 7156. The Board had offset the award against a sales tax liability claimed by the Board. The trial court determined that plaintiffs were exempt from the tax and ordered the Board to refund the tax by paying the award with interest. The Court of Appeal held that the trial court lacked jurisdiction to rule on plaintiff's entitlement to a sales tax exemption (53 Cal.App.4th at p. 209), but otherwise affirmed the judgment. After concluding that the trial court did have jurisdiction to consider whether the litigation cost award was a state debt subject to offset against a tax liability under the authority of Government Code sections 12419.4 and 12419.5, the Court of Appeal held that the offset was improper because the section 7156 award was not an ordinary debt. (53 Cal.App.4th at p. 214.)

The basis for the *Garg* court's holding that the trial court lacked jurisdiction to rule on the tax exemption issue was article XIII, section 32. The court recognized that article XIII, section 32 bars pre-payment actions which " 'prevent or enjoin the collection' of the tax," and are directed at "an integral part of the taxing process." (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization, supra*, 27 Cal.3d at p. 280.) Therefore, the court held, article XIII, section 32 barred consideration of the exemption claim until plaintiffs paid the sales tax "together with interest" in full. (*Garg, supra*, 53 Cal.App.4th at p. 208.) The *Garg* decision offers no independent analysis or basis for its conclusion that article XIII, section 32 bars an action related to an asserted tax liability until interest as well as the tax is paid. The opinion states, without citation to authority, that the Board is correct in its argument that article XIII, section 32 bars adjudication of the validity of a tax "before the tax, together with interest and penalties, has been paid in full." (*Garg, supra*, 53 Cal.App.4th at p. 208.) Later, in a footnote, also without analysis, the opinion notes that the Board relied on *People* v. *Pacific Employers Ins. Co., supra*, 36 Cal.App.3d 296, and *Sonleitner* v. *Superior Court, supra*, 158 Cal.App.2d 258, which "stand for the proposition, *not contested in this case*, that interest and penalties are part of any tax claim, which must be paid before the taxpayer may litigate the validity of the tax." (*Garg, supra*, 53 Cal.App.4th at p. 211, fn. 12, italics added.)

*Garg* supports the Board only to the extent that the decisions on which it relies do. As we have pointed out above, however, neither *People* v. *Pacific Employers Ins. Co., supra*, 36 Cal.App.3d 296, nor *Sonleitner* v. *Superior Court, supra*, 158 Cal.App.2d 258, undertook to construe section 6931 or attempted to ascertain whether the Legislature intended to require prelitigation payment of the accrued interest as well as the tax as a precondition to litigation of the validity of the tax.

As with article XIII, section 32, neither the language nor the history of section 6931 supports a conclusion that prepayment of interest as well as the tax was intended. We conclude it was not.

E. *Validity of the Board's Prepayment of Interest Policy.*

Under any standard of judicial review, the Board's policy exceeds its authority. Interest does not become an integral part of the taxes to which article XIII, section 32 and section 6931 refer when those taxes become delinquent. The Legislature has not required that accrued interest on a tax deficiency be paid as a condition to litigation challenging the tax assessment. We recognize, as did the Court of Appeal, that government operations and the very existence of government depend on the prompt payment of taxes.

(*State Bd. of Equalization* v. *Superior Court, supra,* 39 Cal.3d at pp. 638-639.) Article XIII, section 32 and section 6931 reflect recognition of the crucial importance of prompt tax collection. However, at no stage in this litigation has the Board attempted to establish that prepayment of accrued interest in addition to the delinquent tax is necessary to carry out the purpose of section 6931 or article XIII, section 32.

Therefore, the Board's policy impermissibly burdens a taxpayer's right to seek refund of taxes by requiring payment of accrued interest as well as the tax. The policy is not legislatively authorized, is not shown to be reasonably necessary to enforcement of the Sales and Use Tax Law, and is fatally inconsistent with the governing law. It may not be enforced.

## III

### *Disposition*

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.